IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19cr62-MHT-SRW |
| | ) | |
| THOMAS WILLIAM GRIER | ) | |

## REPORT AND RECOMMENDATION

This case is before the court on defendant's motion to suppress evidence. Doc. 16. For the reasons discussed below, the court concludes that the motion to suppress is due to be denied.

Defendant seeks to suppress "all evidence seized during his arrest, and his statements given, and the Harrison and Richardson[] Topper Model 158[] 12 gauge shotgun, and any ammunition, on or about January 12, 2018." Doc. 16 at 1. Defendant also seeks suppression of "all fruits of the illegal arrest of [defendant], searches and seizures, and [defendant's] multiple confessions and statements." *Id.* at 5. The court addresses each category of evidence in turn.

### 1. Confessions and statements

Defendant does not actually identify in his motion any confessions or statements that he proposes for suppression by the court, or offer any facts or argument relating to such statements. The court cannot recommend suppression of statements that either do not exist or, if they do, were not specifically brought to its attention. *See United States v. Porter*, 2018 WL 4214189, at *11 (M.D. Ala. 2018) (statements were not required to be suppressed where defendant did not advise the court – through his motion or argument at

the suppression hearing – what the statements were that he wished to have suppressed; no testimony was provided at the hearing as to the contents of the statements, when and to whom the statements were made, how much time elapsed between the seizure of the evidence and the statements, whether defendant was in custody at the time he made the statements, and whether the statements were even incriminating in the first place; and defendant offered no argument whatsoever as to why the statements should be considered the "fruit of the poisonous tree" or whether they somehow stood alone.). *See also United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008) ("At the end of the day, as the moving party, at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed."); *United States v. Diezel*, 608 F.2d 204, 207(5th Cir. 1979) ("As this Court said in *United States v. Evans*, ... 'The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed.'") (citation omitted); *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) ("It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing.").

### 2. *Other evidence*

The physical evidence that defendant seeks to suppress was secured by the government through the execution of a search warrant on January 12, 2018. The warrant, which was for the search of 5600 Carmichael Road, Apartment 2321, Montgomery, Alabama, was signed on January 11, 2018 by Montgomery County District Court Judge Jimmy B. Pool. *Id.* at 1-2; Doc. 16-1 at 4.

The grounds for defendant's motion fall into two categories. First, defendant contends that the search warrant was not supported by probable cause because the affidavit used to obtain the warrant did not establish a nexus between the place searched and the claimed illegal activity that was sufficient to support a determination that the items sought to be seized would be found in the place and location sought to be searched. *Id.* at 3. Thus, defendant argues, the search violated the Fourth Amendment. *Id.* at 2. Defendant further contends that the affiant acted with "reckless disregard of the facts." *Id.* at 7. Defendant requests a *Franks* hearing "to determine whether there would have been probable cause for the warrant" without the identified paragraphs.

Second, defendant points out that while a "supplementary offense report" states that a shotgun was seized, the initial inventory report does not list the shotgun. Defendant appears to believe that this fact supports his suppression motion. However, he does not make a discrete argument regarding the unconstitutionality of this omission in the initial inventory form that accompanied the warrant return, nor does he explain how the failure to include it in the initial inventory provides a basis for suppression of any evidence.

The court turns first to defendant's probable cause argument.

### a. Probable cause[1]

---

[1] The court did not set an evidentiary hearing on defendant's probable cause claim because the court "looks to the face of the particular affidavit" at issue, as it was presented to the judge, in assessing probable cause. *See United States v. Hendon*, 253 F. App'x 809, 810–11 (11th Cir. 2*007); United States v. Anderson*, 152 F. App'x 915, 917 (11th Cir. 2005 ).

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In issuing a warrant, a judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quotation omitted); *see also United States v. Jiminez,* 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting *Gates,* 462 U.S. at 238). The court must find only that the judge had a "substantial basis" for concluding that probable cause existed to uphold the warrant. *See Gates,* 462 U.S. at 238; *see also Massachusetts v. Upton,* 466 U.S. 727, 728 (1984). The validity of the warrant is reviewed based on the totality of the circumstances. *See United States v. Brundidge,* 170 F.3d 1350, 1352 (11th Cir.1999). "'[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]'" *Id.* (quoting *Gates,* 462 U.S. at 232).

"Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determination." *United States v. Miller,* 24 F.3d 1357, 1361 (11th Cir.1994). Suppression of evidence is only required where the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975). "[T]he resolution of doubtful or marginal cases in

this area should be largely determined by the preference to be accorded to warrants."
*Upton*, 466 U.S. at 734 (citation and internal quotation marks omitted).

In this case, the warrant affidavit was signed under oath by "Det. S.A. Lisenby #2435 of the Montgomery Police Department." Doc. 16-1 at 1-4. The affidavit supporting the warrant application consisted of four pages. It reported, *inter alia*, that Michael Conway was suspected of having committed the crime of unlawful breaking and entering of a motor vehicle and/or receiving stolen property and that the affiant believed Michael Conway was living at 5600 Carmichael Road apartment 2321, Montgomery, AL 36117.

According to the affidavit,

1. The … **Residence** … to be searched is in the State of Alabama, Town of Shorter, County of Macon[2] and is described as follows: The residence of W/M Christopher Michael Conway[] …, located at 5600 Carmichael Road Apartment 2321[,] Montgomery, A[L] 36117, who is under investigation for Unlawful Breaking and Entering of a Motor Vehicle and/or Receiving Stolen Property. The property is described as follows: The 2300 Building of the Crossings at Carmichael apartments. Apartment 2321 is in the middle of the building on the bottom right hand side closest to Woodmere Boulevard. The apartment is covered by brown paneled siding and has a gray satellite dish in the yard on the right side of the patio. There is a set of stairs leading up to the apartment with black metal railing that is also lined by medium sized bushes. There is also a medium to large tree to the immediate right of the apartment. There are [sic] also a set of "rabbit ear" antennas on the porch. This search of the above named property will include all interior/exterior areas of the aforementioned residence, any/all vehicle(s), outbuilding(s), or person(s) contained within the curtilage therein[,] as well as any vehicles parked on the roadway or in the parking lot that belong to or are being utilized by persons therein.

2. The **<u>PROPERTY</u>** to be searched for and seized, if found, is specifically described as: Hilti and Milwaukee power tools bearing markings of

---

[2] This appears to be a typographical error, as the residence listed later in the affidavit is within the city of Montgomery, which is in Montgomery County.

"SCSI" or similar lettering. Any illegal firearms and/or ammunition, any illegal narcotics, [a]ny/[a]ll electronic devices (computers, tablets, cell phones, external hard drives, thumb drives, etc.)[,] to include the off-site search of any seized devices for any electronic data found on such. Any other items deemed to be evidence by the case agent to indicate that W/M Christopher Michael Conway …. or any other persons committed the crime of Unlawful Breaking and Entering of a Motor Vehicle and/or Receiving Stolen Property or any other crime within the State of Alabama.

3. The **<u>GROUNDS</u>** for the search are that said property:

     a. (X) Was, or is expected to be, unlawfully obtained;

     b. (X) Was, or is expected to be, used as the means of committing or attempting to commit any offense under the laws of the State of Alabama or any political subdivision thereof;

     c. (X) Is, or is expected to be, in the possession of any persons with intent to use it as a means of committing a criminal offense, or is, or is expected to be, in the possession of another to whom that person may have delivered it for the purpose of concealing it or preventing its discovery;

     d. (X) Constitutes, or is expected to constitute, evidence of a criminal offense under the laws of the State of Alabama or any political subdivision thereof;

[…]

1. The **FACTS** establishing probable cause for the search are: Between the dates of December 23, 2017 at approximately 1200 hours through December 26, 2017 at approximately 0830 hours, an unknown suspect(s) made forced entry into a trailer belonging to Structured Communications Solutions[,] which was parked at 2740 Zelda Road Montgomery, A[L] (USAmeriBank). The suspect stole approximately $150,000 worth of assorted tools, including Hilti and Milwaukee Drills, Bandsaws and Sawzalls[,] as well as electronic testing equipment. Several[,] if not all[,] of these tools are marked in marker with "SCSI" or similar lettering on them.

6

2.    Further probable cause being that on December 29, 2017[,] Detective S.A. Lisenby #2435 was contacted by W/M David Garringer … who stated that W/M Christopher Michael Conway, under the Facebook name of "Chris Smith" (https://www.facebook.com/unforgiven143), contacted him about selling Hilti and Milwaukee tools[,] as well as assorted other tools. Garringer stated that he felt the tools might be stolen and wanted to notify police in case they were. Garringer is an acquaintance of Conway and verified that the "Chris Smith" on Facebook is[,] in fact[,] Conway[,] and that the Facebook name he uses is fake. Garringer provided photos of the tools that Conway was selling[,] and in one of the photos[,] the "SCSI" lettering is clearly visible on a Hilti drill battery pack. These photos were forwarded to Structured Communications Solutions and the tools were positively identified by one of their representatives as being the tools belonging to them that were stolen in the offense.

3.    Further probable cause being that on Wednesday, January 10, 2018 at approximately 0307 hours, Patrol Officers J.S. Howell #2739 and M.L. Blair #2613 performed a traffic stop of a white Ford F250 pickup truck bearing AL Tag # R01497 with a VIN# of 1FTEF2767VNC91178 for having the tag concealed with a black jacket in the 5700 block of Carmichael Road. During the course of the traffic stop, Conway was found to have 3 outstanding [c]apias warrants with the City of Montgomery and was detained. Conway also gave the officers on the scene consent to search his vehicle. Officer Howell located a currently unknown pill believed to be a controlled substance inside the vehicle and placed Conway under arrest for the [c]apias warrants. Conway then escaped from the back of the patrol vehicle by crawling through the rear driver's side window and fled on foot while in handcuffs while Howell was searching the vehicle.

4.    Further verification of Conway's identity was obtained by comparing his Alabama driver's license photo to the photos on Facebook of "Chris Smith." 1778 Old Federal

Road[,] Montgomery[,] A[L] is his listed address as of 8/11/2017 on the driver's license. Contact was made with the Shorter Police Department on January 8, 2017, who verified that Conway is known by them and has been living there with his father.

5.      Further probable cause being that after the serving the search warrant for 1778 Old Federal Road, Shorter, A[L], Conway's father, W/M Terry Smith …, stated that Conway has been staying at the apartments at 5600 Carmichael Road and that one of his other sons, W/M Joshua Champion … could provide the exact address. Champion provided the address of 5600 Carmichael Road[,] Apartment 2321[,] Montgomery, A[L] 36117 and stated that he had recently been to the apartment to help Conway change a flat tire on the white Ford F250.

6.      Further probable cause being that when Conway was taken into custody on December 29, 2017, he was initially pulled over as he was leaving the area of 5600 Carmichael Road. B/F Jasmine Whitlow … was also in the white Ford F250 with him. Whitlow provided an address of 5600 Carmichael Road[,] Building 2300[,] when she was taken into custody.

7.      Further probable cause being that on January 8, 2018[,] Conway called 911 [d]ispatch and attempted to report the white Ford F250 as being in [u]nauthorized [u]se status, and claimed that a B/F took the keys to the vehicle from him while was asleep. Conway provided the address of 5600 Carmichael Road[,] Apartment 2321[,] to [d]ispatch during this call.

Doc. 16-1 at 1-4 (brackets supplied). Judge Pool signed and the Montgomery County

District Court issued the warrant on January 11, 2018. *Id.* at 4.

Officers executed the warrant on January 12, 2018 and Lisenby returned the

warrant, with an inventory log attached to it, on January 16, 2018. Doc. 16-2. On a

handwritten sheet of paper, he listed the following as having been seized during the search:

- Dewalt Tool Box
- Ridgid Tool Box + Screws
- Skilsaw [sic] – 41217
- Red Bucket
- HP Laptop – CND8073BLH
- Dewalt Drill – 749380
- Ryobi Drill – CS16455D090302
- Ryobi Saw RJ165V – CS094365305
- Ryobi Saw P516 – CS1628SN130159
- Ryobi Circle Saw – CS16461DD30252
- Hercules Circle Saw – 37460-1723
- Kobalt Circle Saw – 001831
- Ryobi Drill –
- Hercules Circle Saw – 37460-1723
- Craftsman Grinder – 0326-W

Doc. 16-2 at 4 (bullets supplied).

A second inventory form that was filed with the warrant return lists the following

items as having been seized during the search:

1. Red Samsung Phone
2. Blue LG Cell Phone
3. (2) Syringes + Meth Pipe
4. (3) Boxes Ammo
5. Digital Scale
6. Baggie
7. (2) Digital Cameras
8. Meth, Digital Scale, Grinder, Syringes, Pipe
9. Black Bag Containing Glass Jar w[ith] Weed
10. Black Iphone w[ith] Charger
11. Meth Pipe
12. LG Phone
13. Dewalt Tool Bag Assorted Tools
14. "                              "
15. AWP Tool Bag Assorted Tools
16. Gun Magazines
17. HP Computer Laptop SN CND8073BLH
18. Red Bucket Assorted Tools
19. Assorted Ammo Shotgun Shells
20. HP Laptop SN [illegible]

9

21. Dremel Drill Press
22. Black Bag Assorted Power Tools
23. LG Cell Phone

Doc. 16-2 at 5 (brackets supplied). The bottom of the form, in handwritten text, states, "No further items." *Id.*

Thereafter, Lisenby completed a "supplementary offense report" with "follow-up" information. Lisenby appears to have drafted this report on January 13 – the day after the search. The "[d]ate, [t]ime of [s]upplement" is listed as "1/13/2018." Doc. 16-3 at 1.[3] It reads

> **Follow-up:**
>
> On January 11, 2018[,] at approximately 1000 hours, I executed a search warrant at 1778 Old Federal Road, Short A[L] 36075, which was Conway's last known address and the address on his Alabama [d]river's license. During the search, contact was made with W/M Terry Smith …, who is Conway's father and the owner of the residence. Smith was presented with a copy of the search warrant[,] but also gave voluntary verbal consent to search his property. T. Smith also stated that he had recently forbidden Conway to return to the property because of suspected drug activity. T. Smith further stated that Conway was living in the apartments at 5600 Carmichael Road in Montgomery and that his other son, W/M Joshua Champion … could give the exact address.
>
> The search of 1778 Old Federal Road yielded negative results for any of the stolen property. T. Smith did state[,] however[,] that Conway had property at the residence and took it with him when he left, and was also suspected in stealing several of T. Smith's own tools at the same time.
>
> I made contact with Champion at approximately 1300 hours. Champion stated that Conway had been living at 5600 Carmichael Road[,] Apartment 2321, Montgomery[,] A[L] 36117, for approximately 2 months after he was kicked out of his father's house. I also located a 911 call from

---

[3] Defendant states that it is "dated approximately January 25, 2018." Doc. 16 at 6. That date is listed as the one on which the "[arrest] [w]arrant/[p]etition [was] [s]igned." Doc. 16-3 at 1.

Conway on January 8, 2018 in which he provided the address of 5600 Carmichael Road[,] Apartment 2321[,] Montgomery, A[L] 36117, as his home address. I then secured a search warrant for that apartment in order to continue attempting to recover stolen property and evidence.

On Friday, January 12, 2018[,] at approximately 0945 hours, I executed the search warrant at 5600 Carmichael Road Apartment 2321. This apartment is the residence of W/M Thomas Grier … who has an extensive criminal history to include drug trafficking, burglary, theft and receiving stolen property. Due to Grier's criminal history and reported drug activity in the area, SWAT operators were utilized to make entry into the residence and [n]arcotics investigators were utilized to assist in the search. The front door of the apartment was barricaded by a board being nailed across it and had be forcibly opened using a battering ram. After making entry into the apartment, Grier, along with W/F Jennifer Willison …, W/F Christy Avant …, B/F Jasmine Whitlow …, B/M Christopher Wagstaff … and W/M James Findley … were taken into custody inside.

The following items were seized during the search warrant: 1 red Samsung cell phone, 2 LG cell phones, 1 iPhone, 5 syringes, 3 methamphetamine pipes, 3 boxes of assorted ammunition, 3 digital scales, a box of sandwich baggies commonly used for packaging narcotics, 1.2 grams of suspected Methamphetamine, 51.2 grams of suspected Marijuana in a large mason jar, 2 Marijuana grinders, 2 black and yellow Dewalt toolbags containing assorted tools, an unlabeled black bag containing assorted tools, an AWP bag containing assorted tools, a 5 gallon bucket containing assorted tools, 4 gun magazines, a[n] HP [l]aptop computer, a Compaq laptop computer, a Dremel drill press, a Dewalt tool kit, a Ridgid tool box containing assorted screws, a Dewalt [d]rill (Serial# 749380), a Ryobi drill (Serial# CS16455D090302), a Ryobi RJ165V saw (Serial# CS094365305), a Ryobi P516 saw (Serial#CS1628SN1301159), a Ryobi circular saw (Serial # CS16461DD30252), a Hercules circle saw (Serial # 37460-1723), a Kobalt circle saw (Serial# 001831), a Ryobi drill ([m]utilated [s]erial#)[,] a Craftsman grinder (Serial # 0326-W), **a Topper Model 158 [s]hotgun (unknown serial#)**, [and] a Black and Decker saw [s]erial # 153099.

Grier was transported to DPS South Central, where he was read his [a]dult Miranda rights and agreed to provide a voluntary statement. During this statement, Grier indicated that all of the tools recovered from his residence, as well as the shotgun, were brought into the residence by Conway. The Black & Decker (Serial#150399) is possibly going to match one of the items taken from Structured Communications Solutions, however[,] further confirmation by the victim is needed at this time. Grier

also stated that Conway is storing more items in a rented storage unit, however[,] he does not know where this unit is located.

Doc. 16-3 at 1-3 (brackets supplied)(emphasis added).

Defendant Grier's claim concerning Judge Pool's finding of probable cause based on the affidavit is, in essence, that the affidavit "listed four separate paragraphs" in which the affiant "linked" Conway's address – 5600 Carmichael Road, Apartment 2321, Montgomery, Alabama – to the "theft of tools" and that "these paragraphs considered individually or as a whole are insufficient to establish a nexus between Grier's residence and Conway's criminal activity."

A warrant affidavit "'should connect the place to be searched with the defendant and the criminal activity.'" *United States v. Donaldson*, 558 F. App'x 962, 968 (11th Cir. 2014) (quoting *United States v. Martin,* 297 F.3d 1308, 1314 (11th Cir. 2002)). However, a specific allegation that illegal activity occurred at the place to be searched is not required. As the Eleventh Circuit has observed,

> [t]he justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime. *United States v. Kapordelis,* 569 F.3d 1291, 1310 (11th Cir.2009). Moreover, an allegation that illegal activity occurred at the place to be searched, such as the home, is not necessary, but the affidavit … should link the defendant to the home and connect the home to any criminal activity. *Id.* In establishing the link to criminal activity, it is not necessary that the home be the "locus" of criminal activity. *United States v. Bradley,* 644 F.3d 1213, 1264 (11th Cir.2011). "Evidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at [his] residence will support a search." *United States v. Anton,* 546 F.3d 1355, 1358 (11th Cir.2008); *see also United States v. Jenkins,* 901 F.2d 1075, 1080–81 (11th Cir.1990)

(holding that the affidavit was supported by probable cause because of the combination of the defendant's theft, the fact that the contraband was capable of being hidden in the home, and the statement of an experienced FBI agent that individuals who steal money often hide it in their homes).

*Donaldson*, 558 F. App'x at 968. *See also United States v. Hamda*, 647 F. App'x 1004, 1009 (11th Cir. 2016)(same); *United States v. Pendleton*, 447 F. App'x 978, 981 (11th Cir. 2011) (same); *Kapordelis,* 569 F.3d at 1310 (The warrant affidavit "must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a safe yet accessible place.")(citation and internal marks omitted).

In the instant case, the warrant affidavit offered sworn testimony from a law enforcement officer, Detective Lisenby, that at some point between December 23, 2017 and December 26, 2017, someone broke into a trailer belonging to Structured Communications Solutions ("SCSI") – which was parked at 2740 Zelda Road in Montgomery, Alabama – and stole $150,000 worth of tools and equipment. On December 29, 2017, an individual named David Garringer contacted the affiant. Garringer told the affiant that Conway had a dummy Facebook account registered under the name of "Chris Smith" and that Conway had contacted Garringer through Facebook and asked him if he wanted to buy certain tools. Garringer told the affiant that Conway had photographs of the tools and provided the affiant with copies. Of the pictured tools that Conway was attempting to sell, at least one – a drill – was visibly marked with the letters "SCSI."

Law enforcement contacted SCSI and one of its employees confirmed that the tools Conway was attempting to sell on Facebook were the same as those that had been stolen

from its trailer a few days earlier. Law enforcement also compared the photo associated with the dummy Facebook account to Conway's Alabama driver's license photo and confirmed that the man who purported to be "Chris Smith" and Conway were the same person.

Later – on either December 29, 2017 or January 10, 2018[4] – two officers conducted a traffic stop of a white Ford F250 truck leaving the 5600 block of Carmichael Road in Montgomery. Conway was driving the vehicle. The officers discovered that Conway had three capias warrants; therefore, they placed him under arrest. Though Conway later absconded during a search incident to the arrest by fleeing on foot while in handcuffs, passenger Jasmine Whitlow provided the officers with the address of 5600 Carmichael Road, Building 2300.[5]

Working from the address listed on Conway's driver's license, law enforcement contacted the Shorter, Alabama police department and confirmed that Conway was known to the department and that he lived there with his father. On a date omitted from the first affidavit,[6] law enforcement obtained and the affiant executed a search warrant at Conway's

---

[4] In one paragraph, the affiant states that the traffic stop occurred on January 10, 2018. In another, he refers to a stop on December 29, 2017. The court has reviewed the evidence and it appears the traffic stop occurred on January 10, 2018, and that the December date is simply a typographical error. While the court cannot be certain about this, it is not necessary to make a determination on this point, as it does not impact the court's recommendation.

[5] The affidavit does not make clear whether Whitlow stated that this was her address, Conway's address, their joint address, or the address from which they had just departed. Nevertheless, this information, coupled with the truck's having just left the 5600 block of Carmichael Road, suggests a connection between Conway and the address.

[6] The supplemental report provides a date of January 11, 2018.

father's address. Conway's father told the affiant that Conway had been living in the apartments in the 5600 block of Carmichael Road in Montgomery and that his other son, Joshua Champion, could give him the exact address. Law enforcement contacted Champion, who said that Conway lived at 5600 Carmichael Road, Apartment 2321, in Montgomery. Champion added that he had recently been to that very apartment to help change a flat tire on Conway's white Ford F250 – the same vehicle that had been the subject of the traffic stop.

Finally, the affiant said that on January 8, 2018, Conway had called 911 and attempted to report his white Ford F250 as "being in [u]nauthorized [u]se status," and claimed that a black female had taken the keys from him while he was asleep. Conway provided dispatch with the following address: 5600 Carmichael Road, Apartment 2321, Montgomery, Alabama.

Under the circumstances outlined above, this court readily concludes that the affidavit submitted in support of the search warrant in this case sufficiently established a reasonable basis to conclude that Conway lived at 5600 Carmichael Road, Apartment 2321, Montgomery, Alabama and that he was in possession of contraband that was of the type that one would normally expect to be hidden there – a place "to which easy access may be had and in which privacy is nevertheless maintained." *Donaldson*, 558 F. App'x at 968; *see also United States v. Gamory*, 635 F.3d 480, 491 (11th Cir. 2011) (citation omitted) (Affidavits supplied the authorizing magistrate judge with a reasonable basis for concluding that defendant "might keep evidence of his crimes at his home."). Under the totality of the circumstances, the court finds that Judge Pool made a common sense

determination that a fair probability existed that theft-related evidence would be found in the place to be searched. *See Gates,* 462 U.S. at 238. The evidence, viewed as a whole, provided a "substantial basis" for the judge's finding of probable cause, and there is no Warrant Clause violation here. *See Upton*, 466 U.S. 727, 732–33; *Gates*, 462 U.S. at 238–39.

The court is not persuaded that the alleged deficiencies raised by defendant call into question the above conclusion. Defendant first argues that in paragraph three of the affidavit, the affiant states that Conway was a suspect in the theft, but does not allege that Conway stored stolen items at Grier's residence. As previously explained, the court is satisfied that the warrant sufficiently established a reasonable basis to conclude that Conway lived at 5600 Carmichael Road, Apartment 2321, Montgomery, Alabama and that he was in possession of contraband that was of the type that one would normally expect to be hidden there. Moreover, an affidavit need not specifically allege that the home was the locus of the criminal activity. *See Bradley,* 644 F.3d at 1264.

Defendant also argues that in paragraph five, the affiant states that Conway's father and brother provided him with the Carmichael Road address, but fails to establish that these relatives are reliable witnesses. Defendant makes the same argument regarding the reliability of Whitlow, the passenger in the traffic stop. Similarly, defendant argues that the affiant did not include information regarding the reliability of the individual at "dispatch" who reported that Conway provided the subject address during the course of his 911 call. However, common sense permits the conclusion that Conway's immediate relatives (a father with whom he had recently lived and a brother who had been to the apartment), and

a passenger in his vehicle (especially one who had been in the car with Conway when he was observed leaving the 5600 block of Carmichael Road), could reasonably be relied upon to provide Conway's correct address. Common sense also permits the conclusion that someone who works as an emergency dispatcher is reliable, especially when the specific information concerning the address noted by the dispatcher is the same as that provided by close relatives. Particularly where, as here, defendant does not explain why any of these persons' reliability should be called into question, and offers no case law or legal argument in support of his contention, the court cannot conclude that this alleged deficiency warrants suppression.

Next, defendant takes issue with the affiant's failure to state specifically whether or not he relied on information he received from other officers and, if so, his failure to identify those officers. It is axiomatic that observations of other officers involved in a common investigation are a reliable basis for warrant applied for by one officer. *See United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965). Additionally, while it is the better practice for an agent to state in the affidavit that he or she is relying on information from other officers, this is not a "hypertechnical" requirement. An affidavit is sufficient if "it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law enforcement officers." *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986). The affidavit in this case – especially in contrast to the supplemental offense report – is not a model of clarity. For instance, because the affiant does not speak in the first person, the court cannot know which information the affiant learned firsthand through his own investigation and which came to him through his work

with fellow officers. However, one can reasonably deduce from the affidavit that multiple officers were working on this case. For example, it is clear that the affiant received information from the officers (whom he identifies by name) who initiated the traffic stop and took Whitlow into custody. In this regard, the affidavit is sufficient to support Judge Pool's probable cause determination.

Finally, defendant takes issue with the fact that the affiant stated in one paragraph that the traffic stop took place on December 29, 2017, but in another paragraph refers to a January 10, 2018 stop. A common sense reading of the affidavit is that the December date is simply a typographical error. Moreover, whether the stop occurred on the earlier or later date, the information gleaned from the stop would still form a sufficient basis for a probable cause determination. Further, even absent the paragraphs that refer to the traffic stop, the evidence, when viewed as a whole, and taking into consideration the totality of the circumstances, provided a substantial basis for the judge's finding of probable cause.

### a.  *Franks*

Defendant contends that he has "demonstrated at least a reckless disregard of the facts" sufficient to warrant a hearing on his suppression motion in this case. The Supreme Court has made it clear that "[t]here is ... a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684.

> In *Franks*, the Supreme Court held the Fourth Amendment requires a district court to hold a hearing when a defendant makes a substantial preliminary showing that: (1) a warrant affiant made intentionally false or recklessly misleading statements (or omissions); and (2) those statements, or omissions, were necessary to the finding of probable cause. 438 U.S. 154, 155–56, 98

> S.Ct. 2674, 57 L.Ed.2d 667 (1978). The defendant must (1) allege deliberate falsehood or reckless disregard for the truth; (2) specifically point to the allegedly false portions of the warrant affidavit; and (3) provide an offer of proof, including sworn affidavits or otherwise reliable witness statements, or satisfactorily explain the absence of such evidence. *Id.* at 171, 98 S.Ct. 2674. If, upon such a showing, the content in the affidavit remains sufficient to support a finding of probable cause, then no hearing is required. *Id.* at 171–72, 98 S.Ct. 2674.

*United States v. Ward*, 732 F. App'x 861, 862 (11th Cir. 2018). Defendant fails to meet this standard.

While defendant attaches exhibits to his motion, none is of the sort that would satisfy the requirement to make a substantial preliminary showing. The only documents attached are the warrant affidavit, the warrant and return documents, and the supplemental offense report. The warrant and warrant affidavit themselves self-evidently do not constitute the offer of proof required by *Franks* in support of the allegation that the affiant recklessly disregarded facts in producing these documents. The supplemental offense report is simply a report of the investigation; the court cannot conclude that this unsworn form report constitutes an "[a]ffidavit[] or sworn or otherwise reliable statement[] of [a] witness" which might proffer the required proof. *Franks,* 438 U.S. at 171. No other affidavits, or sworn or otherwise reliable statements of witnesses, are cited by defendant, and he does not explain their absence. *See U.S. v. Flowers*, 531 Fed. Appx. 975, 980 (11th Cir. 2013) ("the defendant's attack 'must be more than conclusory' and the allegations of deliberate falsehood or reckless disregard for the truth 'must be accompanied by an offer of proof.'") (quoting *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684). Because defendant does not meet his threshold burden, the court does not reach the question of whether the warrant affidavit's

allegedly reckless disregard of the facts would constitute sufficient grounds for suppression of the evidence seized. Defendant is not entitled to a suppression hearing on this argument.

### b. *Inventory omission*

Defendant maintains that while the "supplementary offense report" states that a shotgun was seized, the initial inventory report that accompanied the warrant return does not list the shotgun. Defendant does not make any specific argument as to how this omission in the initial inventory form that accompanied the warrant return might provide a basis for suppression of the weapon. However, even if he had, the law on this issue is clear – failure to include in an inventory list evidence that was constitutionally seized is not a basis for suppression. *See e.g. Cady v. Dombrowski*, 413 U.S. 433, 439 (1973)("As these items were constitutionally seized, we do not deem it constitutionally significant that they were not listed in the return of the warrant."); *United States v. Parks*, 2007 WL 9760399, *4 (S.D. Fla. 2007)("[l]isting items on a search warrant inventory [i]s a ministerial which does not invalidate the search.")(quoting *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979)).

### CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion to suppress (Doc. 16) be DENIED.  It is further

ORDERED that **on or before January 21, 2020**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party filing the objection

objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. §636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 7th day of January, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge